Opinion
 

 FRANSON, J.
 

 A supplemental petition was filed in the Kern County Juvenile Court alleging that appellant came within the provisions of Welfare and Institutions Code section 602 in that on December 19, 1976, he unlawfully took a 1968 Dodge van belonging to S. J. Mobley in violation of Vehicle Code section 10851. At the jurisdictional hearing the allegations of the petition were found to be true. Appellant, who was already subject to a Youth Authority hold relating to an earlier offense, was ordered committed to the Youth Authority, the commitment to be served concurrently with the prior one.
 

 
 *110
 
 Statement Of The Facts
 

 Chuck H., appellant, and his brother Delbert, all minors, were living in Taft, California. Earlier that month Chuck H. had taken the keys from inside a 1968 Dodge van while it was parked on the used car lot of S. J. Mobley and had subsequently given the keys to Delbert. On the evening of December 19, 1976, Chuck was at the local recreation center when appellant arrived. They walked around town and came across Delbert near the Nickolodian. When Delbert heard that appellant and Chuck were planning to hitchhike the following morning, he suggested that they take the Mobley van instead. At that time appellant left to go to his girl friend’s, Chuck returned to the recreation center, and Delbert stayed at the Nickolodian.
 

 Later that night, shortly after the recreation center closed at 11 p.m., Delbert arrived and found Chuck; the two then walked around town for a couple of hours, during which time they thought and talked about taking the van. They went by Mobley’s used car lot and actually got inside the unlocked van. However, Taft Police Officer Dan Robison spotted them and took them home to Delbert’s residence. The boys walked downtown again. They then went to Delbert’s grandmother’s and to Delbert’s, where they found appellant. At Delbert’s suggestion they all decided to walk downtown again and take the van. Delbert entered the lot and took the van and then picked up Chuck and appellant, who had been waiting behind a building about 50 feet away. The three of them drove back to Delbert’s to pick up some clothes. They also picked up a motorcycle lying in a bush. They left for Santa Cruz, where Chuck’s mother lived. On the way there they stopped near Coalinga, where Chuck sold the motorcycle to a service station attendant. After arriving and driving around in Santa Cruz for a while, Chuck was taken to his mother’s house and appellant and Delbert started back toward Taft. The van broke down on the return trip. Delbert and appellant were given a ride back to Taft by Lonnie Robison, appellant’s cousin.
 

 On December 20, 1976, Dan O’Dell, a salesman for S. J. Mobley, received a call from the police at about 10 a.m., informing him that a van had been located near Black Well’s Corner. O’Dell and another employee went there and discovered that the van was not operable.
 

 Appellant’s defense was that he had been at his girl friend’s from about 6 p.m. on December 19 until he was awakened by Chuck and Delbert at about 4 a.m. on the morning of the 20th. They asked him if he wanted to
 
 *111
 
 go to Santa Cruz in the van, which they said belonged to Chuck’s uncle. Appellant agreed. He denied having been downtown with them earlier that evening, denied having participated in the taking or driving of the van, and denied even knowing that the van was stolen until they stopped to sell the motorcycle, at which time they told him that they had stolen both the motorcycle and the van.
 

 Discussion
 

 Appellant’s primary contention—that the accomplice testimony of Chuck H. was insufficiently corroborated—is without merit. Assuming that the accomplice-corroboration rule is applicable to juvenile proceedings,
 
 [1]
 
 there was sufficient corroborative testimony to uphold the judgment. The standard for measuring the sufficiency of corroboration is easily met: “ ‘The evidence required for corroboration of an accomplice “need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.” [Citations.] Moreover, evidence of corroboration is sufficient if it connects defendant with the crime, although such evidence “is slight and entitled, when standing by itself, to but little consideration.” [Citations.]’ ”
 
 (People
 
 v.
 
 Hathcock
 
 (1973) 8 Cal.3d 599, 617 [105 Cal.Rptr. 540, 504 P.2d 476].)
 

 However, it is insufficient corroboration merely to connect a defendant with the accomplice or other persons participating in the crime. “ ‘It is not with the thief that the connection must be had but with the commission of the crime itself.’ ”
 
 (People
 
 v.
 
 Robinson
 
 (1964) 61 Cal.2d 373, 400 [38 Cal.Rptr. 890, 392 P.2d 970].) Thus, in the present case the corroboration must indicate in some way that appellant had
 
 *112
 
 knowledge that the van was stolen when he drove in it to Santa Cruz. (See Veh. Code, § 10851.)
 

 Chuck testified as follows: He had obtained the ignition key to the van about three weeks before the theft. On the night of the theft, he, Delbert, and appellant discussed taking the van at the Nickolodian. Appellant then went to his girl friend’s house, Chuck went to the recreation center, and Delbert stayed at the Nickolodian. Sometime later Delbert picked up Chuck at the recreation center. At about 11 or 12 o’clock they went to the Mobley lot and were sitting inside the van when Officer Robison spotted them. He took them to Delbert’s house. Sometime thereafter they got appellant and went to get the van. Delbert drove it from the lot while appellant and Chuck waited behind a nearby building. They drove to Delbert’s house to get some clothes and then picked up a motorcycle and departed for Santa Cruz. They sold the motorcycle at a service station near Coalinga on the way. In Santa Cruz Chuck showed them around town. Delbert and appellant then left him at his mother’s house and left Santa Cruz to return to Taft.
 

 Officer Kleadas testified that appellant told him that he had knowledge that Chuck had a key to the van two to three weeks before the theft. This admission, together with appellant’s own testimony placing him in the van traveling to Santa Cruz late at night and corroborating several other details of Chuck’s version of the journey, “ ‘ “tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth.” ’ ”
 
 (People
 
 v.
 
 Hathcock, supra,
 
 8 Cal.3d 599, 617.)
 

 Appellant next contends that the trial court erred in admitting Lonnie Robison’s out of court statement. At trial Lonnie Robison testified about the conversation he overheard between appellant and Delbert after Robison picked them up in Black Well’s Comer. He denied that appellant and Delbert mentioned having stolen the van. The prosecutor asked Officer Kleadas about a statement Robison had given him. Kleadas testified that Robison told him that he had overheard appellant and Delbert talking about how they had taken the van. The prosecutor stated that this evidence was only being introduced to impeach Robison.
 

 Robison’s statement to Kleadas was inconsistent with his testimony at trial and therefore within the prior inconsistent statement exception to the hearsay rule (Evid. Code, § 1235). Appellant argues that the statement contained inadmissible multiple hearsay and it was never established
 
 *113
 
 whether he or Delbert made the remark. However, the testimony was that appellant and Delbert had a conversation about taking the van. From this we infer that appellant made either an admission or an adoptive admission. (Evid. Code, §§ 1220, 1221.) The testimony of Kleadas concerning Lonnie Robison’s out of court statement was properly admitted.
 

 Appellant next contends that the prosecution did not show that the vehicle was taken without the owner’s consent as required by Vehicle Code section 10851. The following circumstantial evidence refutes this argument: Chuck admitted that he stole the key to the van a few weeks before the van was taken. Delbert persuaded appellant and Chuck to take the van to go to Santa Cruz, meaning that they should steal it. Chuck testified that Delbert got the van from the lot while he and appellant waited behind a nearby building. Mobley’s salesman testified that he received a call from the police about a missing van, went to the lot and confirmed this, and then went to the police department. The van was found the next morning near Black Well’s Comer, a considerable distance from Taft. These circumstances clearly establish that the van was taken without the owner’s consent.
 

 Appellant’s final contention is that the trial court abused its discretion in denying him the discovery of Chuck’s rap sheet. Appellant had requested discovery of the rap sheet of each witness. The trial judge approved the request but precluded the release of any criminal records of juvenile witnesses. Appellant argues that this denial violated his right to a fair trial by impeding his ability to thoroughly cross-examine Chuck H.
 

 Appellant cites
 
 Davis
 
 v.
 
 Alaska
 
 (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105], which stands for the proposition that the Sixth Amendment’s right to confrontation requires that defense counsel be permitted to cross-examine a crucial prosecution witness about his probation status following an adjudication of juvenile delinquency. The defendant in that case had sought to use the evidence to show that the witness had implicated the defendant out of fear of possible jeopardy to the witness’ probation. The court concluded that Alaska’s interest in protecting the confidentiality of juvenile adjudications was outweighed by the defendant’s right to inquire into the possible motives of the prosecution witness.
 

 In California criminal defendants have a judicially created right of discovery, which is based on the fundamental proposition that they are
 
 *114
 
 entitled to a fair trial and intelligent defense in light of all relevant and accessible information.
 
 (Pitchess
 
 v.
 
 Superior Court
 
 (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305];
 
 Hill
 
 v.
 
 Superior Court
 
 (1974) 10 Cal.3d 812, 816 [112 Cal.Rptr. 257, 518 P.2d 1353].) The scope of such discovery is quite extensive. “ ‘Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on the issues in the case, and
 
 in particular it has no interest in convicting on the testimony of witnesses who have not been
 
 as rigorously cross-examined and
 
 as thoroughly impeached as the evidence
 
 permits.’ ”
 
 (Hill
 
 v.
 
 Superior Court, supra,
 
 at p. 816, quoting
 
 People
 
 v.
 
 Riser
 
 (1956) 47 Cal.2d 566, 586 [305 P.2d 1].
 
 Hill’s
 
 italics.) This right has been held to encompass rap sheets.
 
 (Hill
 
 v.
 
 Superior Court, supra.)
 
 Moreover, it is not necessary that the evidence to be discovered be admissible at trial.
 
 [2]
 

 (People
 
 v.
 
 Cooper
 
 (1960) 53 Cal.2d 755, 770 [3 Cal.Rptr. 148, 349 P.2d 964].)
 

 In light of these considerations and the trend in the last 15 years to expand criminal discovery in California (see Louisell, Modern Cal. Discovery (2d ed. 1963) § 14.01, p. 847), we conclude that the trial court erred in denying appellant the right to discover Chuck’s rap sheet. The crucial question then becomes whether it is reasonably probable that a different verdict would have been reached if the rap sheet had been discovered.
 
 (People
 
 v.
 
 Riser, supra,
 
 47 Cal.2d 566, 588;
 
 People
 
 v.
 
 Watson
 
 (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We must examine the entire record, including the evidence, to make this determination.
 
 (People
 
 v.
 
 Watson, supra; People
 
 v.
 
 Pipes
 
 (1960) 179 Cal.App.2d 547, 555-556 [3 Cal.Rptr. 814].)
 

 The record is devoid of any indication that Chuck H. even had a rap sheet at all. If he did, only felony convictions could have been used to impeach him. (See fn. 2.) While any minor 16 years of age or older may be transferred to a criminal court upon a showing that he is not a fit and proper subject for the juvenile court (Welf. & Inst. Code, §§ 707, 707.1), it is extremely unlikely that Chuck had been transferred and convicted of a felony since he was 17 years old at the time he testified at trial and not in custody at the time of the theft.
 

 
 *115
 
 It is also unlikely that Chuck’s rap sheet would have contained information showing a possible motive for his testimony. In
 
 Davis
 
 v.
 
 Alaska, supra,
 
 415 U.S. 308, the defendant argued this point specifically. In this case appellant has not made such a claim either at trial or before this court. Moreover, it is hard to imagine such a motive existing because Chuck’s testimony was extremely self-incriminatory.
 

 We conclude that the error in denying appellant’s discovery motion was not prejudicial.
 

 The judgment is affirmed.
 

 Brown (G. A.), P. X, and Hopper, X, concurred.
 

 A petition for a rehearing was denied July 21, 1978, and appellant’s petition for a hearing by the Supreme Court was denied August 16, 1978.
 

 [1]
 

 Three appellate cases have held that the Penal Code section 1111 corroboration requirement does not apply to juvenile cases.
 
 (In re Eugene M.
 
 (1976) 55 Cal.App.3d 650, 657 [127 Cal.Rptr. 851];
 
 In re D. L.
 
 (1975) 46 Cal.App.3d 65, 73 [120 Cal.Rptr. 276];
 
 In re R C.
 
 (1974) 39 Cal.App.3d 887 [114 Cal.Rptr. 735].) However, in
 
 In re Mitchell P.
 
 (Cal.App.) Civil No. 19002, the court held that it violates equal protection to apply Penal Code section 1111 to adult proceedings but not juvenile. The Supreme Court granted a hearing in this case on December 22, 1977; therefore, the state of the law is unclear on this issue.
 

 [2]
 

 In California only felony convictions can be used to impeach a witness. (Evid. Code, § 788.) A juvenile court adjudication is not considered a conviction and cannot be used to impeach. (Welf. & Inst. Code, § 203; Witkin, Cal. Evidence (2d ed. 1966) § 1244, subd. (1), p. 1147.)